IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**BARBARA CLUCK,**

      **Plaintiff,**

      vs.

**UNUM LIFE INSURANCE COMPANY OF AMERICA,**

      **Defendant.**

Case No. 2:18-cv-056

Judge Sarah D. Morrison

Chief Magistrate Judge Elizabeth P. Deavers

## OPINION AND ORDER

This matter is before the Court for the resolution of two discovery motions filed by Barbara Cluck ("Plaintiff"). (ECF Nos. 83 and 84.) Plaintiff seeks to compel Unum Life Insurance Company of America's ("Defendant") to produce documents, pursuant to Federal Rule of Civil Procedure 37(a), in response to her Requests for Production Nos. 3.1, 3.2, and 3.3. (ECF No. 84.) Plaintiff also seeks an order, pursuant to Federal Rule of Civil Procedure 36(a)(6), overruling Defendant's objections to Plaintiff's Request for Admission 2.2 and directing Defendant to provide a complete and unambiguous response to that Request. (ECF No. 83.) Both motions have been fully briefed. For the reasons that follow, Plaintiff's motions (ECF Nos. 83, 84) are **GRANTED IN PART** as more fully explained herein.

**I.    Background**

Plaintiff became disabled in 2008 while she was employed as a medical assistant at The Ohio State University ("OSU"). She received short-term disability benefits from February of 2008 until May of 2008 under insurance policy number 121156 ("the policy"), issued by

Defendant to OSU.  When that short-term disability period ended, Defendant reviewed Plaintiff's medical status and determined that she was eligible for long-term disability benefits.  Defendant subsequently conducted periodic reviews of Plaintiff's medical status and approved her claim for long-term benefits until 2015, when Defendant determined that Plaintiff was capable of performing sedentary work, and thus, was no longer disabled.  Defendant terminated Plaintiff's long-term disability benefits at that time.  Plaintiff appealed, but Defendant affirmed its decision.

Plaintiff filed suit alleging breach of contract and bad faith in the denial of her claim. (ECF No. 1.)  In January of 2020, Plaintiff moved for summary judgment on her breach of contract claim (ECF No. 40); Defendant moved for summary judgment on Plaintiff's bad faith claim (ECF No. 41).  While those motions were pending, Plaintiff filed a motion to compel the production of documents that had been requested during discovery including documents related to Defendant's relationship with OSU in light of deposition testimony indicating that Defendant had special or unique rules for handling claims made by OSU employees like Plaintiff.  (ECF No. 50.)  After holding a status conference on February 26, 2020, the Court ordered Defendant to produce those documents.  (ECF Nos. 59, 60.)  Defendant complied in March of 2020.

On April 1, 2020, Plaintiff moved to re-open discovery because issues came to light as a result of Defendant's March 2020 production.  (ECF No. 64.)  Specifically, Plaintiff contended that a two-page financial document numbered #2.10-000047 and #2.10-000049 ("Exhibit I" filed under seal (ECF No. 78)) demonstrates that the claims made under the policy exceeded policy premiums for several years prior to Defendant's determination that Plaintiff was no longer eligible for benefits under the policy.  (*Id.*)  Plaintiff further contended that Exhibit I showed that during the approximate period that Plaintiff's claim was denied, the situation reversed.  (*Id.*) According to Plaintiff, this late-obtained information made it possible for her to discover

additional evidence that could substantiate her bad faith claim in which she asserts that Defendant began denying disability claims, like Plaintiff's, without regard to their merits in order to promote Defendant's own financial interests. (*Id.*) Defendant asserted that Plaintiff's interpretation of the data in the financial document was speculative and produced affidavits from underwriters indicating that information about policy premiums is not shared with claims personnel who process claims independently. (ECF Nos. 72, 72–1, 72–2.) Nevertheless, the Court concluded that Plaintiff was entitled to additional discovery that either supported or refuted her theory about Defendant's response to the policy's loss ratio over time. (ECF No. 77.) Plaintiff propounded new requests for production and requests for admission. Defendants' responses to those additional discovery requests are the basis of her *instant* motions.

## II.     Standard of Review

Federal Rule of Civil Procedure 26(b) identifies the acceptable scope of discovery:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1); *see also* Fed. R. Civ. P. 33(a)(2) ("An interrogatory may relate to any matter that may be inquired into under Rule 26(b)."), 34(a) ("A party may serve on any other party a request [to produce documents] within the scope of Rule 26(b)[.]") Although this scope is far reaching, "[d]istrict courts have broad discretion over docket control and the discovery process." *Pittman v. Experian Info. Sol., Inc.*, 901 F.3d 619, 642 (6th Cir. 2018) (citations omitted). In short, "a plaintiff should have access to information necessary to establish her claim, but [] a plaintiff may not be permitted to 'go fishing'; the trial court retains discretion." *Anwar v. Dow Chem. Co.*, 876 F.3d 841, 854 (6th Cir. 2017) (citing *Surles ex rel. Johnson v.*

3

*Greyhound Lines, Inc.*, 474 F.3d 288, 305 (6th Cir. 2007)); *see also Superior Prod. P'ship v. Gordon Auto Body Parts Co., Ltd.*, 784 F.3d 311, 320–21 (6th Cir. 2015) ("In sum, '[a]lthough a plaintiff should not be denied access to information necessary to establish her claim, neither may a plaintiff be permitted to 'go fishing' and a trial court retains discretion to determine that a discovery request is too broad and oppressive.'" (quoting *Surles ex rel. Johnson*, 474 F.3d at 305)).

### III. Discussion

#### A. Requests for Production

A party may file a motion to compel discovery when a party fails to produce documents or allow for inspection as requested under Rule 34. Fed. R. Civ. P. 37(a)(3)(B). "[T]he movant bears the initial burden of showing that the information sought is relevant" under Rule 26. *Prado v. Thomas*, No. 3:16-cv-306, 2017 WL 5151377, at *1 (S.D. Ohio Oct. 19, 2017) (citing *Gruenbaum v. Werner*, 270 F.R.D. 298, 302 (S.D. Ohio 2010)). If the movant makes that initial showing, then "the party resisting production has the burden of establishing that the information is either not relevant or is so marginally relevant that the presumption of broad disclosure is outweighed by the potential for undue burden or harm." *Pillar Title Agency v. Pei*, No. 2:14-cv-525, 2015 WL 2238180, at *3 (S.D. Ohio May 12, 2015) ((Kemp, M.J.) (citing *Vickers v. Gen. Motors Corp.*, No. 07-2172 M1/P, 2008 WL 4600997, at *2 (W.D. Tenn. Sept. 29, 2008)); *see also* Fed. R. Civ. P. 26(b)(1) advisory committee's note to 2015 amendment (stating that a party claiming undue burden or expense "ordinarily has far better information—perhaps the only information—with respect to that part of the determination" and that a "party claiming that a request is important to resolve the issues should be able to explain the ways in which the underlying information bears on the issues as that party understands them").

       1.       Request for Production 3.1 (Exhibits I and II)

As explained *infra*, Defendant's March 2020 production included Exhibit I, which has been filed under seal. (ECF No. 78.) Both pages bear the words "Exhibit I." (*Id.*) The Court gleans from attachments to the parties' filings that Exhibit I reflects underwriting information for the policy issued to OSU. Apparently, Defendant has also, at some point, produced a similar document that bears the label "Exhibit II." (PAGE ID # 2526, 2541, 2543, 2545.)

Plaintiff seeks the production of "the entire, complete and unredacted document," including all exhibits and attachments, to which Exhibits I and II were appended and "from which" Exhibits I and II were "excerpted." (PAGE ID # 2536.) Defendant objects to this request on the basis that it is vague, overbroad and unduly burdensome in scope and time frame, lacking or of limited relevance, seeks confidential business information, and seeks private information about other insureds. (PAGE ID #2537.) Subject to those objections, Defendant responds that Exhibits I and II were not appended to other documents. (*Id.*) Defendant's counsel has reiterated that response in communications with Plaintiff's counsel. (PAGE ID # 2543, 2545, 2548, 2550.)

Plaintiff expresses skepticism about Defendant's response because the label "Exhibit" implies that the document had been made part of another document. (PAGE ID # 2526.) Defendant points out, and the Court agrees, however, that "exhibit" and "attachment" are not necessarily synonymous. Defendant has formally answered that there is no "foundational document" to which Exhibits I and II were both attached. (PAGE ID # 2537.) Defendant's counsel has informally explained that Exhibits I and II were not attached to another foundational document and has warranted under signature that the label "Exhibit" indicates only that the document was used to exhibit or present underwriting information. (PAGE ID # 2545, 2548,

2550, 2561.) Defendant's response is adequate.

What is not entirely clear from the filings, however, is whether Defendant has produced unredacted copies of all documents that bear the label "Exhibit." Defendant indicates that it has produced unredacted copies of Exhibit I, which Defendant refers to as the "Sealed Documents." (PAGE ID # 2561, 2548.) It also appears that Defendant has also produced an unredacted copy of Exhibit II at bates label #3.2000003. (PAGE ID # 2543.) But it appears that Defendant has only produced a *redacted* copy of Exhibit III, described as "a table that identifies open claims as of a specific date by individual name and organized by date of disability" in response to another of Plaintiff's discovery requests. (PAGE ID # 2561, 2545.) Notably, Exhibit III, which is also referred to by counsel as "Attachment 2" to a March 21, 2013 email, explicitly pertains to the policy that Defendant issued to OSU that covered Plaintiff's claims, *i.e*., policy number 121156. (PAGE ID # 2545.) Defendant has also indicated that when its underwriters prepare documents "stylized as 'Exhibit I' and 'Exhibit II' it also produces an 'Exhibit III'." (PAGE ID # 2561, fn.2.) Thus, even if these Exhibits are not appended to one "foundational document" it appears that they are all created together and are related to one another. Plaintiff's document request seeks all exhibits from which Exhibits I and II were "excerpted." That includes Exhibit III to the extent it was generated as a companion document in the way that Defendant has described.

Moreover, the Court is not satisfied that the redactions are justified. Plaintiff indicates that Exhibit III was redacted in its entirety when it was produced in response to another document request. It appears that Defendant redacted the information in Exhibit III because it believed it was not responsive to that other document request. (PAGE ID # 2545.) The Court concludes that Exhibit III is responsive to request 3.1 and thus redaction on the basis that the document is nonresponsive to another document request is unjustified. Defendant is

**ORDERED** to produce a copy of Exhibit III, referred to in Defendant's July 14, 2020, email to counsel as "Attachment 2" in response to document request 3.1. (ECF No. 2545.) Although Defendant is **ORDERED** to redact individual names, social security numbers, and other personal identifiers that the document may contain, the remainder of the document should be produced unredacted.

        2.     Request for Production 3.2 and 3.3

In request for production 3.2 and 3.3, Plaintiff seeks the following:

> 3.2: Produce all documents that reflect, memorialize, constitute, or refer to analyses, discussions, or communications with Unum or between or among Unum employees or agents (regardless of the business unit to which such employees or agents are attached) during the Time Period about the Perceived Claims Experience Disparity.
>
> 3.3: Produce all documents that reflect, memorialize, constitute, or refer to analyses, discussions, or communications between Unum or its employees or agents (regardless of the business unit to which such employees or agents are attached) and any third party, including OSU during the Time Period about the Perceived Claims Experience Disparity.

(PAGE ID # 2536, 2537.) Plaintiff defines the "Perceived Claims Experience Disparity" as "the appearance (whether true or not)" that "Unum was paying more in OSU claims than it was receiving in premiums from OSU." (PAGE ID # 2535.) Plaintiff additionally defines the "Time Period" as January 1, 2009, through December 31, 2015. (PAGE ID # 2535.)

Defendant objects to these requests on the basis that they are vague; overbroad and unduly burdensome with regard to the defined Time Period; not relevant or lacking in relevance; seek confidential business information; and seek private information about other insureds. (PAGE ID # 2537, 2538.) Subject to those objections, Defendant produced what appears to be approximately 60 pages of documents in response to request 3.2 and approximately 20 pages of

7

documents in response to request 3.3.  (*Id.*)

Plaintiff asserts that Defendant improperly objects to Plaintiff's defined Time Period (January 1, 2009, through December 31, 2015), and only produced documents from January 1, 2013, through December 31, 2015.  The Court agrees.  Although Defendant argues that it has produced documents from three years prior to its determination that Plaintiff was no longer eligible for long-term disability benefits, Defendant determined that Plaintiff was eligible for such benefits from 2009 until 2015.  Then something changed.  Documents related to Defendant's communications about its loss-ratio analysis, internally or with others, is relevant to prove, or undermine, Plaintiff's claim that Defendant denied claims, including her own, in bad faith after its loss ratio was no longer tolerable.  A comparison of documents reflecting discussions about what, for instance, the tolerable loss-ratio was when her claims were approved to documents reflecting what the tolerable loss-ratio was when her claim was not approved would be relevant to her claim.  Plaintiff is seeking to establish how the loss-ratio tolerance changed over time.  Documents during the period when she was approved are relevant for such a comparison.

In addition, although Plaintiff objects in its responses that Plaintiff's proposed Time Period is unduly burdensome, it has put forth no argument or evidence about any purported burden.  Indeed, Defendant's counsel concedes that Defendant withheld responsive documents that were from the Time Period that Plaintiff defined.  (PAGE ID # 2550.)  That Defendant has identified such documents tends to undermine the claim that it would be burdensome to locate and produce them.  Instead, Defendant asserts only that the period from which it produced documents— January 1, 2013, through December 31, 2015— was defensible because it covered the three years prior to its unfavorable disability determination and encompassed the negotiation

8

of the policy renewal bid which took effect in 2014.  But that is not sufficient.  Once Plaintiff has established that the information she seeks to discover is relevant, Defendant must show that the information's relevance is marginal *in relation to the potential for undue burden or harm.* Defendant has not explained how any potential burden outweighs the information's relevance. Accordingly, Defendant is **ORDERED** to produce documents from January 1, 2009, through December 31, 2015, that are responsive to document requests 3.2 and 3.3.

Plaintiff also asserts that the documents that Defendant has produced in response to these requests were improperly redacted.  Plaintiff identifies two documents with particularity.  (ECF No. 2587.)  The first is a March 21, 2013 email sent by one of Defendant's employees, an underwriter, to another of Defendant's employees whose tasks included servicing Defendant's OSU account.  (PAGE ID # 2587.)  Although Defendant produced the email in response to document request 3.2 seeking communications between Defendant's employees about the "Perceived Claims Disparity" (whether Defendant was paying more in OSU claims than it was receiving in premiums from OSU), Defendant redacted all eight attachments to that email (bates labeled #3.200004–10.)  In subsequent correspondence, Defendant's counsel explained that the attachments were redacted because they were non-responsive to the request.  (PAGE ID # 2545.) Specifically, counsel explained that all but one of the attachments[1] contained information about other policies that did not cover Plaintiff's claims (policy numbers 134155, 144338, 210818). (*Id*.)  Defendant additionally asserts that its redactions are justified because the redactions are limited, and it described the information that was redacted.  (PAGE ID # 2564–65.)  Plaintiff replies that Defendant has already produced other unredacted document related to these other policies; these three other policies were all issued by Defendant to OSU; and that Defendant's

---

[1] One attachment, "Attachment 2," is Exhibit III, discussed *supra*.

relationship with OSU is unitary even if has issued a total of four separate polices to OSU. (PAGE ID # 2588–89.)

The Court **ORDERS** Defendant to produce unredacted copies of the attachments to the March 13, 2013, email. The Court finds that email and its attachments constitute a singular communication. The Court also finds that Plaintiff's definition of the "Perceived Claims Experience Disparity" does not limit the request to communications about the loss ratio for the particular policy that covered Plaintiff's claims but instead seeks communications about whether Defendant was generally paying more for claims to OSU employees than it was receiving for premiums paid OSU. (PAGE ID # 2535.) Accordingly, the Court finds that the entire communication, even if it included data about Defendant's other OSU policies, is responsive to the request. Moreover, such information is relevant to Plaintiff's bad faith claim, which is that Defendant began denying claims because it was losing money from its contractual relationship with OSU. The Court cannot find that producing unredacted copies of these eight attachments poses an undue burden. Nevertheless, it appears that "Attachment 8" may contain names or other personal identifiers. To the extent it does, Defendant is **ORDERED** to redact that information.

Plaintiff also asserts that Defendant improperly redacted information from a document entitled "The Ohio State University / Renewal Analysis for Policy # 121156" (bates labeled #3.2000022–30.) In correspondence, Defendant explained that the pages were redacted or withheld because they were non-responsive to the request. (PAGE ID # 2545.) Defendant indicates that the redacted pages contain three charts comparing data from long-term disability claims covered by other policies issued by Defendant to the policy issued by Defendant to OSU (presumably policy number 121156); six charts of data collected from the analyses of disability

10

plans of other employers in OSU's industry; a statement regarding Defendant's valued partnership with OSU and a notice regarding broker compensation; and a glossary of terms. (*Id.*) Defendant asserts that the charts "were provided so that OSU could analyze its income protection plan's claims experience as compared with other employers within its industry and Unum's block of business for purposes of renewal analysis." (PAGE ID # 2566.)

The Court is at a disadvantage because it is not familiar with the renewal analysis document and counsel's description is cursory. Nevertheless, the Court first concludes that the renewal analysis and the charts, statement, and glossary that support it constitute a single document. The Court further concludes that this document is responsive to document request 3.3. That request seeks communications between Defendant and OSU reflecting analyses of whether the difference between claims paid and premiums collected negatively impacted Defendant's financial interests. The renewal analysis appears, in its entirety, to contain information allowing OSU to analyze the claims paid to its employees under its long-term disability policy to the claims paid to employees of other employers under different policies issued by Defendant. It also appears that this information was provided to OSU during the renewal bidding process, which was presumably designed to justify and explain the premiums that would be assessed to OSU for the renewed policy. Although this constitutes an indirect discussion of Defendant's tolerable loss-ratio, the Court is at a loss, in the absence of additional information, to determine how the document is non-responsive. Counsel does not assert that producing unredacted copies of these documents is irrelevant to Plaintiff's claims, including her theory that Defendant treated claims from OSU employees differently than claims made by employees of other entities in order to keep OSU's premiums low. Nor does Defendant contend that any relevance is offset by the burdens of production. Defendant is, therefore, **ORDERED**,

to produce unredacted copies of these documents.

B. Request for Admission 2.2

Plaintiff also moves to determine the sufficiency of Defendant's response to its request for admission 2.2. Federal Rule of Civil Procedure 36 provides the standard for requests for admission. "A party may serve on any other party a written request to admit, for purposes of the pending action only, the truth of any matters within the scope of Rule 26(b)(1) relating to: [ ] facts, the application of law to fact, or opinions about either . . . . " Fed. R. Civ. P. 36(a)(1). Section (a)(4) explains the rules for responding to such a request: "If a matter is not admitted, the answer must specifically deny it or state in detail why the answering party cannot truthfully admit or deny it. A denial must fairly respond to the substance of the matter . . . . " And, section (a)(5) sets the rules for objections: "The grounds for objecting to a request must be stated. A party must not object solely on the ground that the request presents a genuine issue for trial." If a court finds that an answer does not meet these requirements, "the court may order either that the matter is admitted or that an amended answer be served." Fed. R. Civ. P. 36(a)(6).

Although Rule 36 requests for admissions are governed by Rule 26(b)'s relevance standards, they are not, strictly speaking, discovery devices. *Misco, Inc. v. United Steel Corp.*, 784 F.2d 198, 205 (6th Cir. 1986). Instead, they presuppose that the propounding party knows or believes the facts sought and merely seeks a concession on that fact from the other party. 8B Wright, Miller, & Marcus, *Federal Practice and Procedure*, § 2253 (3d ed. 2010) (citing *Misco*, 784 F.2d at 205; other citations omitted); *Wilkinson v. Greater Dayton Reg'l Transit Auth.*, No. 3:11CV00247, 2012 WL 3527886, at *1 (S.D. Ohio Aug. 14, 2012); *Hendricks v. Ohio Dep't of Rehab. & Correction*, No. 2:11-CV-40, 2012 WL 2075317, at *5 (S.D. Ohio June 8, 2012). Their "'proper use is as a means of avoiding the necessity of proving issues which the requesting

12

party will doubtless be able to prove.'" *Wilkinson*, 2012 WL 3527886, *1 (quoting *Khami v. Ortho-McNeil Janssen Pharm., Inc.*, No. 09-cv-11964, 2011 WL 997681 at *2 (E.D. Mich. Mar. 17, 2011).

Request for admission 2.2 seeks to have Defendant admit "that during the Time Period Unum took, or directed its employees and agents to take, actions other than and/or in addition to increasing premiums in response to the Perceived Claims Experience Disparity." (PAGE ID # 2521.) Defendant objected to this request on the basis that it was vague, overbroad and unduly burdensome with regard to the defined Time Frame, and not or lacking in relevance. (*Id.*) Subject to those objections, Defendant admitted that,

> as part of the January 1, 2014 STD and LTD renewal, the premium billing method for LTD Policy No. 121156 was converted from an existing "per employee per month" rate basis to a "covered payroll" rate basis in order to allow the premium to keep up with employee earnings growth. Except as expressly admitted, Defendant denies this request.

(*Id.*)

Plaintiff contends that although she seeks an admission that Defendant took actions in addition to raising premiums, Defendant's response only admits to increasing premiums. (PAGE ID # 2514–15.) Defendant counters that in its answer, it has admitted to changing the premium billing method in 2014, which constitutes an action that was "in addition" to raising premiums. (PAGE ID # 2572.) Defendant also points out that it expressly denied taking other additional actions aside from changing the premium billing method. (*Id.*)

This answer is insufficient to the extent it encompasses the Time Period defined by Plaintiff (January 1, 2009 through December 31, 2015). It is not clear that it does because, as discussed, Defendant indicated that it limited its discovery responses to January 1, 2013 through

13

December 31, 2015. To the extent Defendant's response to this request for admission is similarly limited in time, Defendant is **ORDERED** to amend its answer.

## IV. CONCLUSION

For the reasons set forth above, Plaintiff's motions are **GRANTED IN PART** as described in this Order. (ECF No. 83, 84.) Defendant will have **TEN (10) DAYS** to comply with this Order.

        **IT IS SO ORDERED.**

**DATED: November 2, 2020**

*/s/ Elizabeth A. Preston Deavers*
**ELIZABETH A. PRESTON DEAVERS**
**CHIEF UNITED STATES MAGISTRATE JUDGE**